## M. E. and E. H. GREEN v. STORM and others.

THE court of chancery is as much restricted as any other court, to the issues made by the pleadings; and while it endeavors to avoid technical and narrow grounds of objection, it cannot, without losing sight of essential principles, admit evidence of a different case from that pleaded.

There is a wide distinction between a payment and a set off; and under an answer setting up *payments* made towards a mortgage debt, evidence of corresponding sums due from the mortgagee to the mortgagor, which might be *set off*, is inadmissible.

There is no rule of law, which will apply distinct debts due from and to the same parties as a payment of each other, unless by the assent of both parties, or upon proof of facts from which such assent is clearly inferrible.

A course of dealing between parties, sometimes entitles two partners to set off their joint demand against the debt of one of the partners.

Complainants succeeding in a foreclosure suit, excluded from recovering costs unnecessarily incurred.

In a foreclosure, where one of three mortgagees died pending the suit, which was revived and proceeded in the name of the survivors, without any objection being made until the hearing, the court made a decree of foreclosure and sale, with suitable provisions to protect the rights of the legal representative of the deceased mortgagee, the complainants also undertaking to give effect to such rights.

Form of the provision for that purpose in the decree; Note *a*, at the end of the case.

December 13, 19, 20, 1845; February 27, 1846.

THIS was a foreclosure suit, commenced on the 8th of March, 1844, by the complainants and their mother, Mary Green. The bill was amended in August following, after the death of Mary Green. Besides the mortgagors, Hugh O'Daniel, a subsequent mortgagee; Gershom Sellick, a receiver in a judgment creditor's suit against S. Storm, the mortgagor; and other incumbrancers, were made defendants.

The facts ascertained by the court, so far as they were deemed important, may be thus stated:

Samuel Storm and wife, in 1831, mortgaged the premises in question, to Timothy R. Green to secure $2500, advanced to him by Green, and for which he also executed his bond. The original complainants insisted, that the money loaned belonged to them; T. R. Green, who was a son of Mary Green and the brother of Mary E. and Elizabeth H. Green, being their agent and banker for many years prior to his death, which occurred in April, 1840.

It appeared that T. R. Green indorsed on the bond, as of its date, that it belonged to his mother and sisters; and he executed a formal declaration of trust to that effect, dated October 3d, 1835. It was not distinctly proved that Storm was informed of this trust, or of the complainants ownership, during the life of T. R. Green.

Mr. Green was the attorney and counsel of Storm, and transacted a considerable professional business for him, in a part of which, his brother-in-law, John W. Mitchell, was interested as his law partner. This business led to mutual accounts between Storm and T. R. Green, and between Storm and Green & Mitchell.

It was claimed by the defendants who answered, that in the course of these dealings, T. R. Green became accountable to Storm for three sums of money, which the latter was entitled to have applied towards the satisfaction of his mortgage. No credit had been given for either of them, and the complainants resisted their application on several grounds. One of these sums was

$288 75, alleged to have been received by T. R. Green for Storm, from S. Swartwout, January 5, 1837. Another was $1000, which Storm deposited with T. R. Green, in 1836, as indemnity for his becoming surety for Storm in a bond on a writ of error, prosecuted by the latter to the court for the correction of errors, in a suit against J. Westervelt. It was claimed that the suit was determined in December, 1837, and the bond given up. The testimony on this point was not entirely clear, as will be seen on referring to the judgment of the court. The remaining sum was $156 50, paid to T. R. Green in February, 1837, for rent of the premises in dispute in the Westervelt suit, and which was to await the event of that suit.

On the other hand, the complainants proved a large amount due for costs and counsel fees, from Storm to T. R. Green, and to Green and Mitchell, accruing during several years prior to Green's death, as well as to Mitchell subsequently ; and they procured a great number of the bills of costs, to be taxed, and took testimony very much at large, to prove these demands.

Storm and wife on the 29th of December, 1838, mortgaged the premises to O'Daniel, to secure $850, then loaned to him. O'Daniel in his answer stated that Storm then represented to him, that only $902, was due on the Green mortgage ; and he alleged that sundry large payments had been made at different times by or in behalf of Storm to Green, or for his use, on account of the principal and interest of Green's mortgage, over and above those credited by the complainants.

The defendant Sellick, in February, 1844, was appointed receiver of Storm's effects, and by his tenant, was in possession of the mortgaged premises. In his answer, he set forth, that T. R. Green received sundry payments and sums to be applied on the mortgage, besides those admitted by the complainants. Both of these defendants insisted that T. R. Green was the owner of the mortgage, and had so acted during his lifetime. The other defendants suffered the bill to be taken as confessed.

After the death of T. R. Green, Mrs. Mary Green as his executrix, transferred Storm's bond and mortgage to one Bassett, by whom it was assigned to the three original complainants, before the bill was filed. After the death of Mrs. Mary Green, an order

was entered, dated July 16, 1844, reviving the suit, and directing it to proceed in the names of the surviving complainants. At the hearing, it was objected that her interest did not survive, and the suit was therefore defective; to meet which the complainants offered to read letters testamentary on her estate, to Mary E. Green as sole executrix, and to connect her as such with the suit, in any mode the court might deem proper.

*W. Silliman,* for the complainants.

*E. H. Seely* and *W. A. Seely,* for the defendant, O'Daniel.

*G. Buckham* and *E. Sandford,* for Sellick, receiver, &c.

The Assistant Vice-Chancellor—The objection made to the complainants paper title to the mortgage set forth in the bill, is obviated by the production of the letters testamentary issued to Mary Green. This makes the legal title to the mortgage complete in the three complainants who filed the bill originally.

The question as to the abatement of the suit by Mrs. Green's death, during its pendency, so far as her third part of the mortgage is concerned, was first made at the hearing; and upon the surviving complainants, undertaking to give effect to the rights of her legal representative, (such rights in no manner affecting the defendants,) the defect may be cured by a suitable provision in the decree. (*Harvey* v. *Cooke,* 4 Russell, 34; 1 Daniell's Ch. Pr. 389, 390.)

As to the trust in the mortgage money, which is claimed to have existed from the inception of the mortgage, I find no satisfactory evidence, that the mortgagor was informed of it, during the life of T. R. Green; and I will first examine the case, as if this bill were filed by the executrix of T. R. Green, to foreclose the mortgage as a part of his estate. Before doing this, I will remark that under any aspect of the case, I do not discover any design to defraud, or any wrongful proceeding in reference to the mortgage, or its ownership. If T. R. Green were a trustee, as is insisted by the complainants, it was highly proper for him to provide for the contingency of his death, by indorsing upon or

attaching to the securities, some written testimonial that they were not his own property; and he may well have deemed that it was a matter of entire indifference to the mortgagor, whether the debt belonged to him, or to his mother and sisters, so long as the proper credits were given upon the mortgage. And although the complainant's title under the trust, may have been sufficient to have foreclosed the mortgage in equity, without an assignment, yet their legal title was defective, and it is no impeachment of their equity, that it was deemed prudent to unite both by an assignment. I am not to presume that they or their legal advisers were so ignorant of the law, as to suppose that the formal assignment would impair or alter any prior rights or equities of the mortgagor, or of those claiming under him.

The defence set up in both of the answers is the same. The defendants deny that the whole principal sum is due on the mortgage, and they charge that sundry large *payments of money*, have been made at different times by the mortgagor to T. R. Green, or to some one for his use, *on account of the principal and interest of the mortgage*, besides the payments admitted in the bill. They are ignorant of the particulars and amounts of such *payments*, but one defendant believes they exceed $1500, and the other is informed that they will reduce the amount due on the mortgage to $900.

Now the whole controversy in this respect arises upon testimony, not of payments on account of the mortgage, but of three sums of money, which came into the hands of Mr. Green, from the mortgagor, and which it is claimed the latter had a right to set off against the mortgage. Two of those sums, so far from being a payment on the mortgage, were paid to Mr. Green for entirely different purposes. But the defendants insist as to all these sums, that they remained in Green's hands, after the object for which they were placed there had been accomplished, that Green was thereupon liable to account for the same to the mortgagor, and therefore the law applies the same to the bond and mortgage.

There is a wide distinction between a payment and a set off, and I am not aware of any rule of law which will apply distinct debts due from and to the same parties, as a payment of each

other, unless by the positive assent of both parties, or by proof of a state of facts, from which such assent is clearly inferrible. In this case, neither of these things exist. There is an attempt to imply an assent or acquiescence on the part of Mr. Green, but the inference is fully rebutted by the existing and increasing indebtedness of Storm the mortgagor, to Green and to Green and Mitchell, on simple contract. It is not to be presumed that he would apply these moneys on a mortgage debt, while his sole and partnership claims against Storm, were unpaid, and accumulating. The inference is also repelled, as to the largest sum, by the fact that it was paid to Mr. Green, in a suit pending or about to be commenced, and which went to the court for the correction of errors; and no lawyer would be likely to apply that money to any purpose, after the suit was disposed of, until his costs and charges of the litigation were paid.

To test further the defendant's claim that these were payments, suppose that Storm, after the Westervelt bond was given up, had sued T. R. Green, for the $1000, deposited; and Green had pleaded the general issue or payment, relying upon the production of Storm's bond and mortgage, and the application of the sum as a payment on the same. His defence would have failed beyond all doubt, upon Storm's proving that the $1000, was deposited for a special purpose which had been accomplished, and which had no connection with the bond and mortgage. In such an action, nothing short of a plea or notice of set off, would have enabled Green to avail himself of the bond and mortgage as a defence.

It is thus very apparent that the defendants in this suit, have not set up in their answer, the defence to which their testimony is directed. This court is as much restricted, as any other, to the issues made by the pleadings; and while it endeavors to avoid technical and narrow grounds of objection, it cannot without losing sight of essential principles, admit evidence of a different case from that pleaded. It cannot allow one who has pleaded a set off, to prove a payment, any more than it can permit evidence of a trust, to substantiate a charge of fraud. In *Roosevelt* v. *The Bank of Niagara*, (Hopk. R. 579,) affirmed on ap-

peal, (9 Cowen, 409,) the demand of the mortgagor was allowed as a set off, in express terms, and it was claimed in that form.

I must decide against the defence, assuming it to have been proved as it was claimed at the hearing.

In reference to the costs, as to which a distinct point was made, it is necessary to look into the testimony to the extent of ascertaining the propriety of the course pursued in the examiner's office.

The first item claimed in the defendants proofs, is $288 75, received by Mr. Green for Storm, of Samuel Swartwout in January, 1837. There is no direct testimony that Green received this, but the defendants seek to infer it from a statement made by him, in which he charges himself with the principal sum of $4500, on which the $288 75, was the interest, and it was payable in and by the same security with the principal. But this inference fails, because the statement being the only evidence, that he received any part of it, cannot be stretched to cover any more than it admits. The more just inference from Swartwout's testimony, and the statement is, that Storm himself received the $288 75.

Next is $1000, which Mr. Green retained out of the Swartwout fund, " as security against his signing Storm's bond, to J. Westervelt sheriff, to be retained (by Green,) until the event of Sears's application."

On this subject, the proof is very defective. A paper is made an exhibit, which purports to be this bond, but its execution is not proved. The offer to deliver it to the complainants, was therefore nugatory. Westervelt's testimony is open to the objection, that no bond was identified or produced to him.

If these difficulties were overcome, there is no evidence to fix the time when the bond was discharged. I was referred to the report of the case of *Westervelt* v. *The People, ex rel. Sears*, (in 20 Wend. 416,) as showing that the suit terminated late in December, 1838. But this would not establish that Mr. Green was exonerated from that bond in his lifetime; while it does show, (if it be proper evidence in the cause,) that in respect of this $1000, no right of set off existed in Storm, when he gave his mortgage to O'Daniel.

The testimony on the other side, proves that Mr. Green, alone and together with his law partner Mr. Mitchell, had a large account against Storm, for professional services. Under these pleadings, it was not necessary to prove the extent or the particulars of these demands. It appears that in the settlement of the Swartwout money, and in an account rendered apparently in May, 1838, the demands of Green and Mitchell were brought in by Mr. Green, in his accounting with Storm, and the paper last mentioned, shows that Green and Mitchell were Storm's lawyers in the case of *Sears* v. *Westervelt*. I think it will be found upon a full investigation, in connection with these circumstances that there has been such a course of dealing between Storm and Green and Mitchell, that the latter were entitled to set off their joint demands against either of the items of account, which have been introduced in favor of Storm against Green. (See *Vulli-amy* v. *Noble*, 3 Merivale, 593, 617, 618, 621.)

The last item is $156 50, received by Green in February, 1837, from the tenant, for the rent of the leaseholds in controversy in the Westervelt suit, to be held by him subject to an arrangement between Storm and the tenant. I cannot find any evidence in the case, which shows that Storm ever became entitled to receive this money.

Upon the whole, there was no good cause for the complainants to go into the testimony of Mr. Green's, or of Green & Mitchell's demands against Storm, beyond the point of showing that they conducted suits for him, and in general, the character and extent of the services. And there was no cause for bringing forward the demands which were Mr. Mitchell's exclusively. Their costs of the suit must be restricted accordingly.

They are entitled with this limitation, to the usual decree for the foreclosure and sale of the mortgaged premises. The decree must provide for the payment of one-third of the mortgage debt, to the legal representative of Mrs. Green.(a)

---

(a) The provisions of the decree on this subject, were as follows:

It declared that two-thirds of the mortgage debt belonged to the complainants, and the remaining third part to the executors or administrators of the former complainant, Mary Green, deceased. It directed a reference to a master, to compute and ascertain the amount due to the complainants, and to the legal representatives

Much was said of the hardship of this case on Mr. O'Daniel, but surely there is no just cause for it. He knew of the mortgage to Mr. Green ; and as a man of ordinary prudence, he should have applied to Green, instead of trusting to Storm's representation, as to the amount due on the mortgage.